**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NETGEAR, Inc.        ) | |
|             ) | |
|     Plaintiff,       ) | Case No.: _____ |
|             ) | |
|       v.          ) | |
|             ) | |
| Iron Mountain, Inc.      ) | |
|             ) | |
|     Defendant.     ) | |

## COMPLAINT

Plaintiff NETGEAR, Inc. ("NETGEAR" or "Plaintiff") by and through its undersigned counsel, brings this action against defendant Iron Mountain, Inc. ("Iron Mountain" or "Defendant") to recover damages arising from Iron Mountain's breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of G.L. c. 93A, arising out of Iron Mountain's failure to comply with its obligations under the Document Storage Agreement between NETGEAR and Iron Mountain, effective December 1, 2003.

## JURISDICTION AND VENUE

1. This Court has diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332 because the Plaintiff and the Defendant are citizens of different states and, as discussed below, the amount in controversy exceeds the $75,000 threshold.

2. The Court has personal jurisdiction over the Defendant as the Defendant is a resident of Massachusetts.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as this is the District in which the Defendant resides.

**PARTIES**

4. Plaintiff NETGEAR is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in San Jose, California.

5. Defendant Iron Mountain is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Boston, Massachusetts.

**FACTS**

6. NETGEAR is a computer networking company that produces networking hardware for consumers, businesses, and service providers.

7. Iron Mountain is a company that provides information management and storage services.

8. NETGEAR and Iron Mountain first entered into a Document Storage Agreement, effective December 1, 2003.

9. In August of 2023, NETGEAR informed Iron Mountain that it would be terminating its contract with Iron Mountain, effective September 22, 2023.

10. In response, Iron Mountain issued a final invoice to NETGEAR totaling $86,487.18 (the "Final Invoice").

11. The Final Invoice included fees, including, but not limited to, $18,127.87 for "retrieval," $26,570.88 for "permanent withdrawal," and $29,859.06 for "handling."

12. NETGEAR promptly objected to these fees and requested supporting documents from Iron Mountain's Customer Service.

13. In response, Iron Mountain declined to terminate the account, withheld NETGEAR's business records, and continued to issue invoices.

14. On February 21, 2024, NETGEAR sent a letter to Iron Mountain, explaining its position that the fees asserted in Iron Mountain's final invoice were without any contractual basis.

15. Iron Mountain failed to respond to this letter. Iron Mountain continued to withhold

NETGEAR's records and impose additional new monthly fees dated after the effective date of termination.

16. On June 12, 2024, NETGEAR sent an additional letter explaining its position and inviting Iron Mountain to engage in discussions and/or provide a response by June 29, 2024.

17. Again, Iron Mountain failed to respond to this letter. Iron Mountain continued to issue new monthly fees and withhold NETGEAR's records.

18. On July 17, 2024, Iron Mountain also sent a "Notice of Suspension" to NETGEAR, purporting that "despite several attempts to resolve the outstanding balances" NETGEAR had not paid monthly fees totaling an additional $42,995.61, and that the account was suspended. Iron Mountain further threatened to destroy all of NETGEAR's inventory and refer the account to a credit bureau.

19. On October 2, 2024, NETGEAR sent a letter through counsel to Iron Mountain stating that Iron Mountain's actions constitute a breach of contract, violation of the implied covenant of good faith and fair dealing, and the provisions of Massachusetts General Laws Chapter 93A, §§ 2 and 11. The letter stated that NETGEAR is interested in resolving this dispute through a settlement and without litigation, and requested that prior to settlement discussions, Iron Mountain (1) rescind the monthly fees that Iron Mountain purports to have imposed after the date of termination; (2) withdraw the invalid invoice for $86,487.18; (3) properly close out NETGEAR's account, and (4) release all NETGEAR records. The letter requested that Iron Mountain respond within ten (10) days.

20. To date, Iron Mountain has not responded to this letter. In fact, Iron Mountain has failed to substantively respond to any of NETGEAR's correspondence or provide a contractual basis for the $86,487.18. Iron Mountain continues to (1) unlawfully withhold NETGEAR's

3

records and (2) impose additional monthly fees dated after the effective date of termination.

21. Instead, Iron Mountain's Customer Service Team continues to send invoices.

22. For example, on October 18, 2024, Iron Mountain sent an email to NETGEAR, confirming that NETGEAR's account for storage services is still active. The email provided a breakdown of pending charges, including a total outstanding invoice amount of $54,086.37 and total amount required to close the account of $151,420.73.

23. Most recently, on October 28, 2024, Iron Mountain sent an additional email to NETGEAR, enclosing yet another invoice for the November 2024 storage period (totaling $5,726.18) and stating the total balance due, not including charges related to close the account, is $71,222.24.

## COUNT I
### Breach of Contract

24. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

25. The Document Storage Agreement between NETGEAR and Iron Mountain was terminated by NETGEAR on August 22, 2023, with termination to be effective September 22, 2023.

26. Iron Mountain has materially breached its obligations under the Document Storage Agreement after termination by (1) issuing a final invoice to NETGEAR including exorbitant, redundant, and inapplicable fees (lacking contractual basis); (2) refusing to release NETGEAR's records; (3) failing to properly close NETGEAR's account; and (4) continuously billing NETGEAR fees for months after the date of termination.

27. As a direct result of Iron Mountain's breaches, NETGEAR has suffered damages in an amount to be determined at trial.

## COUNT II
### Breach of the Implied Covenant of Good Faith and Fair Dealing

28. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

29. The Document Storage Agreement between NETGEAR and Iron Mountain was terminated by NETGEAR on August 22, 2023, with termination to be effective September 22, 2023.

30. Every contractual agreement in Massachusetts imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.

31. Iron Mountain's above-described actions breached the implied covenant of good faith and fair dealing in the Agreement.

32. NETGEAR has been damaged by Iron Mountain's (1) issuance of exorbitant, redundant, and inapplicable fees (lacking contractual basis); (2) refusal to release NETGEAR's records; (3) failure to properly close NETGEAR's account; (4) continuous billing of fees for months after the date of termination; and (5) refusal to engage in discussions to resolve this matter, in an amount to be determined at trial.

## COUNT III
### Violation of G.L. c. 93A § 11

33. NETGEAR hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

34. NETGEAR and Iron Mountain are engaged in trade or commerce within the meaning of G.L. c. 93A.

35. Iron Mountain's above-described actions, whereby it (1) issued exorbitant, redundant, and inapplicable fees (lacking contractual basis); (2) refused to release NETGEAR's records; (3) failed to properly close NETGEAR's account; (4) continued billing of fees for months

after the date of termination; and (5) refused to engage in discussions to resolve this matter, were part of a concerted purposeful effort by Iron Mountain to avoid its obligations under the Agreement. Such actions constitute unfair and deceptive acts or practices in commerce within the meaning of G.L. c. 93A §§ 2 and 11.

36. Iron Mountain's unfair and deceptive acts occurred substantially in Massachusetts.

37. Iron Mountain's unfair and deceptive acts have caused, and will continue to cause, NETGEAR damages in an amount to be determined at trial.

38. Iron Mountain committed such unfair and deceptive practices willfully and knowingly.

39. Accordingly, Iron Mountain is entitled to recover double or treble damages, costs, and attorneys' fees pursuant to G.L. c. 93A, § 11.

### RELIEF REQUESTED

WHEREFORE, NETGEAR respectfully requests that this Court:

1. Enter judgment in favor of NETGEAR on all counts.

2. Award damages in favor of NETGEAR (plus interest) in an amount to be determined at trial, including double or treble damages, and attorneys' fees and costs.

3. Award NETGEAR any further relief that the Court deems just and proper.

Dated:    November 21, 2024

Respectfully submitted,

/s/     *Morgan Nickerson*

6

Morgan T. Nickerson (BBO #667290)
morgan.nickerson@klgates.com
K&L Gates LLP
One Congress Street
Suite 2900
Boston, MA 02114
(617) 261-3100
(617) 261-3175

*Attorney for NETGEAR Inc.*